# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMED ABOUBIH,<br><br>                    Plaintiff,<br><br>     v.<br><br><br>ON DECK CAPITAL, INC., NOAH BRESLOW, DANIEL S. HENSON, CHANDRA DHANDAPANI, BRUCE P. NOLOP, MANOLO SANCHEZ, JANE J. THOMPSON, RONALD F. VERNI, and NEIL E. WOLFSON,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Mohamed Aboubih ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by On Deck Capital, Inc. ("On Deck" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning On Deck and the Defendants.

  
## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against On Deck and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Enova International, Inc. ("Parent") and Energy Merger Sub, Inc. ("Merger Sub," and together with Parent, "Enova") (the "Proposed Transaction").

2.     On July 28, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Enova.  Pursuant to the terms of the Merger Agreement, On Deck shareholders will receive 0.092 shares of Parent common stock and $0.12 in cash for each share of On Deck common stock owned (the "Merger Consideration").

3.     On September 8, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against On Deck and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to On Deck shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of On Deck shares.

9.      Defendant On Deck is incorporated under the laws of Delaware and has its principal executive offices located at 1400 Broadway, 25th Floor, New York, New York 10018. The Company's common stock trades on the New York Stock Exchange under the symbol "ONDK."

10.     Defendant Noah Breslow ("Breslow") is and has been the Company's Chief Executive Officer and member of the Board at all times during the relevant time period.

11.     Defendant Daniel S. Henson ("Henson") is and has been a director of On Deck at all times during the relevant time period.

12.     Defendant Chandra Dhandapani ("Dhandapani") is and has been a director of On Deck at all times during the relevant time period.

13.     Defendant Bruce P. Nolop ("Nolop") is and has been a director of On Deck at all times during the relevant time period.

14.     Defendant Manolo Sanchez ("Sanchez") is and has been a director of On Deck at all times during the relevant time period.

15.     Defendant Jane J. Thompson ("Thompson") is and has been a director of On Deck at all times during the relevant time period.

16.     Defendant Ronald F. Verni ("Verni") is and has been a director of On Deck at all times during the relevant time period.

17.     Defendant Neil E. Wolfson ("Wolfson") is and has been a director of On Deck at all times during the relevant time period.

18.     Defendants Breslow, Henson, Dhandapani, Nolop, Sanchez, Thompson, Verni, and Wolfson are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant On Deck, are collectively referred to herein as "Defendants."

### SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     On Deck provides capital financing services to businesses. The Company offers online tools and resources including data aggregation and electronic payment technology, and to evaluate the health of small businesses. On Deck serves small and medium sized businesses in the United States.

## The Company Announces the Proposed Transaction

21.     On July 28, 2020, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> CHICAGO and NEW YORK, July 28, 2020 /PRNewswire/ -- Enova International
> (NYSE: ENVA) and OnDeck® (NYSE: ONDK), today announced that they have
> entered into a definitive agreement under which Enova will acquire all
> outstanding shares of OnDeck in a cash and stock transaction valued at
> approximately $90 million. The implied price of $1.38 per OnDeck share reflects
> a 43.6% premium to its 90-day volume weighted average price and a 90.4%
> premium based on the closing price of $0.73 per OnDeck share on July 27, 2020.
>
> This transaction brings together two complementary, market-leading businesses
> combining world-class capabilities in consumer and small business online
> lending. Enova and OnDeck are both innovators that have helped revolutionize
> online lending, using data and advanced analytics to simplify and expand access
> to financial services for underserved borrowers, while providing an unparalleled
> customer experience. Enova will add the OnDeck brand, products and services to
> its existing industry-leading portfolio to create a combined company with
> significant scale and diverse product offerings in consumer and small business
> market segments that banks and credit unions have difficulty serving. Together,
> Enova and OnDeck had $4.7 billion in originations in 2019 and have served
> approximately 7 million customers.
>
> "This strategic transaction, which brings together two FinTech leaders, is a great
> opportunity for customers, employees and shareholders of both companies,"
> said David Fisher, CEO of Enova. "Together, our companies will be stronger
> because of the complementary strengths and synergies of our businesses.
> Acquiring a premier online small business lender and its ODX bank platform, and
> welcoming its innovative and talented team to Enova, will increase our scale and
> resources, providing us with opportunities to accelerate growth in our increasingly
> diversified portfolio as we continue to execute on our strategy to create long-term
> value for all of our stakeholders."
>
> Noah Breslow, OnDeck Chairman and CEO said, "I am proud of the business we
> have built and the more than $13 billion of financing we have provided to
> underserved small businesses since our founding in 2006. Following an extensive
> review of our strategic options, we believe this is the right path forward for our
> customers, employees and shareholders. Joining forces with Enova, a highly-
> respected and well-capitalized leader in online lending, and leveraging our
> combined scale and strengths, provides the best opportunity for our long-term
> success."
>
> *       *       *

**Transaction Details**

The transaction is valued at approximately $90 million, of which $8 million will be paid in cash. Under the terms of the agreement, OnDeck shareholders will receive $0.12 cents per share in cash and 0.092 shares of Enova common stock for each share of OnDeck held.

Upon completion of the transaction, OnDeck shareholders will own approximately 16.7% of the combined entity, with Enova shareholders owning approximately 83.3%.

The transaction has been unanimously approved by the boards of directors of both companies and is subject to OnDeck shareholder approval and HSR approvals, along with customary closing conditions. The transaction is expected to close this year.

**Board and Management**

Mr. David Fisher will continue to lead the combined company. Mr. Noah Breslow will join the company as Vice Chairman and serve on the Enova management team.

**Advisors**

Jefferies LLC is acting as exclusive financial advisor to Enova, and Vedder Price P.C. is acting as its legal advisor. Evercore is acting as financial advisor to OnDeck and Kirkland & Ellis LLP is acting as its legal advisor.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.     On September 8, 2020, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

24.     The Proxy Statement contains projections prepared by the Company's and Enova's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27.     Specifically, with respect to both sets of projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to EBITDA.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Evercore's Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion of Evercore Group L.L.C. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to Evercore's *Selected Public Company Trading Analyses*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.

31.     With respect to Evercore's *Dividend Discount Model Analysis* for On Deck, the Proxy Statement fails to disclose: (i) the potential dividends used by Evercore in the analysis; (ii) the terminal values used by Evercore in the analysis; (iii) the estimated total assets, tangible common equity, and net income used by Evercore in the analysis; (iv) the basis for Evercore's application of the range of price to next twelve months ("NTM") net income multiples of 4.0x to 8.0x; and (v) the inputs and assumptions underlying Evercore's selection of the range of discount rates of 20% to 30%.

32.     With respect to Evercore's *Equity Research Analyst Price Targets* analyses, the Proxy Statement fails to disclose the specific price targets observed in the analyses, as well as the sources thereof.

33.     With respect to Evercore's *Dividend Discount Model Analysis* for Enova, the Proxy Statement fails to disclose: (i) the potential dividends used by Evercore in the analysis; (ii) the terminal values used by Evercore in the analysis; (iii) the estimated total assets, tangible common equity, and net income used by Evercore in the analysis; (iv) the basis for Evercore's application of the range of price to NTM net income multiples of 4.0x to 8.0x; and (v) the inputs and assumptions underlying Evercore's selection of the range of discount rates from 14% to 18%.

34.     With respect to Evercore's *Illustrative Price to Tangible Book Value Analysis*, the Proxy Statement fails to disclose the basis for Evercore's application of the price to TBVPS multiple reference range of 2.50x to 4.50x.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of On Deck within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of On Deck, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 8, 2020                                  Respectfully submitted,

                                                         By: */s/ Joshua M. Lifshitz*
                                                         Joshua M. Lifshitz
                                                         Email: jml@jlclasslaw.com
                                                         **LIFSHITZ LAW FIRM, P.C.**
                                                         821 Franklin Avenue, Suite 209
                                                         Garden City, New York 11530
                                                         Telephone: (516) 493-9780
                                                         Facsimile: (516) 280-7376

                                                         *Attorneys for Plaintiff*